Richard Eppink
**AMERICAN CIVIL LIBERTIES UNION
OF IDAHO FOUNDATION**
Idaho State Bar no. 7503
reppink@acluidaho.org
P.O. Box 1897
Boise, Idaho  83701
(208) 344-9750, ext. 1202

Craig Durham
**FERGUSON DURHAM, PLLC**
Idaho State Bar no. 6428
chd@fergusondurham.com
223 N. 6th Street, Suite 235
Boise, Idaho  83702
(208) 345-5183

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| BILL BARTLETT, KENNETH FELDER, BRIAN HALSTROM, JONATHAN JENNINGS, and all those similarly situated,<br><br>         Plaintiffs,<br><br>v.<br><br>HENRY ATENCIO, Director of the Idaho Department of Correction (IDOC), JEFF ZMUDA, IDOC Deputy Director, ASHLEY DOWELL, IDOC Chief of Prisons, | Case  No.<br><br>**VERIFIED   CLASS ACTION   CIVIL   RIGHTS COMPLAINT** |

**VERIFIED CLASS ACTION CIVIL RIGHTS COMPLAINT – Page 1**

JESSICA TYLER, IDOC Dietary
Services Manager, JEANNIE
HUNTER, IDOC Food Services
Manager, J. DOEs 1 through 10,
current and former members of the
IDOC division Religious Activity
Review Committee, J. DOEs 11
through 20, IDOC agents or
employees, in their official and
individual capacities,

                              Defendants.

1. By refusing to offer kosher meals, the defendants ("IDOC") force prisoners to violate their core religious beliefs on a daily basis, in violation of law.

2. The plaintiffs are Jewish prisoners who have been forced by hunger to defile themselves every day, for years. They have pleaded repeatedly for meals that comply with the dietary laws of their religion. They sought relief on their own in this Court but were turned away because of procedural missteps. They have searched for lawyers to help them and now have finally found some. Their lawyers tried unsuccessfully to work collaboratively with the Idaho Department of Correction to develop a kosher diet for Jewish prisoners.

3. IDOC's dietary policy is an outlier among American correctional institutions. Kosher food is readily available in the United States, including for prison food service. Most states, as well as the Federal Bureau of Prisons, already

**VERIFIED CLASS ACTION CIVIL RIGHTS COMPLAINT – Page 2**

offer fully kosher meals in all of their prisons. Yet in response to the plaintiffs'

grievances, IDOC instead chose to invest in a new "Common Fare" diet that it

knew was not kosher.

4. The plaintiffs ask that this Court ensure that Jewish prisoners in IDOC

facilities have a kosher option.

**Religious freedom benefits prisoners, prison security, and society**

5. Criminologists and other sociologists have studied religion in prison.

Their studies show that respecting the right of prisoners to practice their religion

facilitates prisoners' adjustment to prison life, promotes rehabilitation, and reduces

recidivism.

6. Their studies find that religion emphasizes accountability and

responsibility, targets antisocial values, changes cognitive approaches to conflict,

and provides social support and social skills.[1]

---

[1] Bryon R. Johnson, et al., *Religious Programs, Institutional Adjustment, and Recidivism among Former Inmates in Prison Fellowship Programs*, 14 Justice Quarterly 145, 148 (1997); *see also* Todd R. Clear, et al., *Does Involvement in Religion Help Prisoners Adjust to Prison?,* NCDD Focus 1 (Nov. 1992); Todd R. Clear & Marin Myhre, *A Study of Religion in Prison*, 6 Int'l Ass'n Res. & Cmty. Alts. J. on Cmty. Corrs. 20 (1995); Byron R. Johnson, *Religiosity and Institutional Deviance: The Impact of Religious Variables upon Inmate Adjustment*, 12 Crim. Just. Rev. 21 (1987); Bryon R. Johnson, et al., *A Systematic Review of the Religiosity and Delinquency Literature: A Research Note*, 16 J. Contemp. Crim. Just. 32 (2000); Byron R. Johnson, *Religious Participation and Criminal Behavior*, *in* Effective Interventions in the Lives of Criminal Offenders 3, 14–15 (J.A. Humphrey & P. Cordella eds., 2014).

**VERIFIED CLASS ACTION CIVIL RIGHTS COMPLAINT – Page 3**

7. Their studies find that when prisoners participate more frequently in religious activities, those prisoners break the rules less often.[2]

8. Their studies find that prisoners who participate in religious activities are less likely to engage in conflict with other prisoners.[3]

9. Their studies find that religious prisoners tend to better adjust to prison and spend less time in disciplinary confinement.[4] Religious practices help even prisoners who insincerely profess religious belief to mitigate the negative psychological and physical impacts of incarceration.[5]

10. Spirituality and religious exercise can provide prisoners with a sense of purpose, hope, and motivation to change. Religious activities lead prisoners to engage with religious communities inside and beyond the prison's walls, steering them away from more harmful social groups that other prisoners join.[6]

[2] Thomas P. O'Connor & Michael Perryclear, *Prison Religion in Action and Its Influence on Offender Rehabilitation*, 35 J. Offender Rehab. 11 (2002).

[3] Kent R. Kerley, et al., *Religiosity, Religious Participation, and Negative Prison Behaviors*, 44 J. for the Sci. Study of REgliion 443, 453 (2005).

[4] Todd R. Clear & Melvina T. Sumter, *Prisoners, Prison, and Religion: Religion and Adjustment to Prison*, 35 J. Offender Rehab. 127, 154 (2002).

[5] H.R. Dammer, *Religious Involvement in the Correctional Environment*, 35 (3/4) J. of Offender REhabiliation 29–47 (2002).

[6] Thomas P. O'Connor & Michael Perryclear, *Prison Religion in Action and Its Influence on Offender Rehabilitation*, 35 J. Offender Rehab. 11, 28 (2002); Todd

**VERIFIED CLASS ACTION CIVIL RIGHTS COMPLAINT – Page 4**

11. After and outside of prison, criminological and sociological studies find that religion and religious involvement correlate with decreases in crime and delinquency.[7]

**Jewish practice in prison**

12. In 2005, IDOC engaged Boise Rabbi Menachem Mendel Lifshitz to review IDOC's accommodations for Jewish practices and make recommendations. Rabbi Lifshitz prepared a report for IDOC that included an overview of Jewish practice "as it related to the correctional setting."

13. The Rabbi explained in his report that "[t]he approach of Judaism to spiritual fulfillment is that every person can attain such achievement" and that "according to Jewish law, if one fails in his or her moral and/or religious obligations, there is always room for repentance."

14. Jewish teachings do not differentiate between a "religious" Jew and a "secular" Jew, the Rabbi explained. All Jews are equally responsible and

---

R. Clear, et al., *Does Involvement in Religion Help Prisoners Adjust to Prison?,* NCDD Focus 1, 6 (Nov. 1992); SpearIt, *Religion as Rehabilitation? Reflections on Islam in the Correctional Setting*, 34 Whittier L. Rev. 29, 38–39 (2012).

7 *See* Byron R. Johnson & Sung Joon Jang, *Crime and Religion: Assessing the Role of the Faith Factor*, *in* The Role of Social Institutions: Papers from the American Society of Criminology 2010 Conference 117, 120 (Richard Rosenfeld, et al., eds., 2012).

**VERIFIED CLASS ACTION CIVIL RIGHTS COMPLAINT – Page 5**

privileged to practice their religion, regardless of previous or future failings, whether temporary or sustained.

15. Every *mitzvah*—commandments of the Jewish faith like keeping kosher —a person performs brings goodness into this world and upon the individual fulfilling that precept, the Rabbi explained in his report to IDOC. "Thus, although ideally every Jew should perform all of the obligatory precepts (*mitzvoth*), even in instances where one is not scrupulous about performance of one or many *mitzvoth* he or she should be given the opportunity to fulfill any given *mitzvah* at any given time. In fact, even if one fails to perform or intentionally omits performance of a certain *mitzvah*, he or she should still be given the opportunity to perform that very *mitzvah* the next time."

16. "Many offenders begin to discover G-d, religion, spirituality, their heritage or other means of fulfillment while incarcerated," the Rabbi told IDOC. "Thus, although they may not have previously been religiously involved—they have the right and responsibility to be religiously involved regardless of the human judgment of staff or others as to their sincerity or level of commitment."

**Kosher food is fundamental to Jewish practice**

17. The essence of *Am Yisroel*, the Jewish people, is their spirituality and holiness—that within the body of the Jew resides a holy and eternal soul. Each *mitzvah*, or commandment, of the Jewish faith serves as a reminder of this.

**VERIFIED CLASS ACTION CIVIL RIGHTS COMPLAINT – Page 6**

18. Even commonplace functions, including physical nourishment, are sacred in nature and sanctify the human body. Conversely, consuming forbidden foods defiles the holy spirit and injures its sanctity. This injury reduces the Jewish capacity to reap the full spiritual rewards of their faith. The result of eating forbidden foods is referred to as *timtum halev*: damage to the heart's ability to fully comprehend. To the dedicated Jew there is a religious force so deeply embedded in the soul that even the most delectable serving of milk and meat, or pork, becomes abominable and physically revolting. Only when the Jew observes his religion's dietary laws as a matter of faith does his commitment permeate his entire life and surroundings, bringing him the meaning of God's teachings.[8]

19. Following the Jewish dietary laws is therefore not a frivolous notion, but a critical need of the Jews to relate with their God in a series of instructions that have been their mark of distinction from the days that they left Egypt thousands of years ago.[9]

20. The dietary laws were given not for the good of the body but that of the soul. Keeping kosher results in a higher spiritual health and a more saintly

---

[8] Rabbi Yacov Lipschutz, Kashruth: A Comprehensive Background and Reference Guide to the Principles of Kashruth 15–16 (1988).

[9] *United States v. Kahane*, 396 F. Supp. 687, 692 (E.D.N.Y. 1975).

**VERIFIED CLASS ACTION CIVIL RIGHTS COMPLAINT – Page 7**

character.[10] Those who observe kosher laws are more likely to observe other rules and lead a healthier, moral life.

21. The Hebrew term "kashrut" is the term for the Jewish laws and customs prescribing the types of food permitted for consumption and their preparation. Following the rules of kashrut is also known as "keeping kosher."

22. The rules of kashrut specify the types of food a Jew may consume and how that food must be prepared. As for types of food, all fruits and vegetables are kosher, but certain meat, poultry, and fish are prohibited. As for preparation, the rules dictate how meat must be slaughtered and inspected, and they require that meat and dairy products—and the utensils and cookware that touch them—remain strictly separated. Prepared foods bear labels to indicate that they are kosher.

23. Special dietary laws apply during the eight-day Jewish holiday of Passover, the most observed Jewish holiday. Passover celebrates the escape of Jewish slaves from Egypt, as described in the biblical book of Exodus. During the eight days of Passover, Jews reflect on their history in slavery through ritual and practice. Strict curtailment of diet is a central component of this observance: during Passover *chametz* (leavened products) and *kitniyot* (rice, corn, millet, and legumes) are forbidden. The central food during Passover is *matzah*, unleavened bread,

---

10 Rabbi Ephraim Buchwald, Kashruth: An Interpretation for the 20th Century (1988), http://njop.org/wp-content/uploads-post-launch/2010/08/kashruth-an-interpretation-in-book-format-3-25-2014.pdf.

which was the food of the Jewish slaves. Prepared foods bear special labels if they are kosher for Passover.

**Kosher food in prison**

24. Most state prison systems in the United States offer a kosher diet option for Jewish prisoners who want to keep kosher. The Federal Bureau of Prisons does as well, for all federal prisoners who want to keep kosher.

25. Most state prisons and all federal prisons provide a kosher diet by purchasing pre-packaged, shelf stable or frozen kosher meals—like TV dinners.[11] During Passover, frozen pre-packaged meals that are kosher for Passover are served.

26. These meals come double-sealed. Thus, prisoners or staff can warm them in any microwave or oven as long as the double seal remains intact and is not broken.

27. To avoid the burdens of keeping utensils and cookware strictly separate, Jewish prisoners can use disposable utensils.[12]

28. By providing double-sealed shelf stable or frozen meals with disposable utensils, prison administrators do not have to spend extra resources to try to keep cookware, serving trays, utensils, and food ingredients separated from food

---

[11] *See Kahane*, 397 F. Supp. at 702.

[12] *Ashelman v. Wawrzaszek*, 111 F.3d 674, 678 (9th Cir. 1997).

**VERIFIED CLASS ACTION CIVIL RIGHTS COMPLAINT – Page 9**

preparation for non-kosher diets. Trying to keep all of that separate is difficult and costly. Even if it were possible, Rabbinic supervision would be necessary to ensure that the food prepared was kosher.

**Kosher food in Idaho prisons**

29. Although IDOC currently refuses to provide kosher meals to prisoners, they have been available in IDOC's system before. When Corrections Corporation of America had a contract to confine Idaho prisoners in its Kit Carson Correctional Center in Colorado, it provided kosher meals to prisoners who requested them as part of their religious exercise.

30. IDOC put an end to those kosher meals, instructing its contractor CCA to stop offering kosher meals to Idaho prisoners.

31. In 1985, this Court itself, as part of the *Balla* litigation (D. Idaho case no. 81-cv-1165), adopted a compliance plan that required IDOC to provide religious diets to prisoners who needed them. This Court ordered IDOC to implement that compliance plan.

32. In Rabbi Lifshitz's 2005 report to IDOC, he made clear to IDOC and its attorneys that Jews are forbidden from eating non-kosher food items. The Rabbi further explained that during Passover, additional food guidelines are enforced and that products that are kosher for year-round consumption cannot be eaten on Passover unless they bear a "Kosher for Passover" certification.

**VERIFIED CLASS ACTION CIVIL RIGHTS COMPLAINT – Page 10**

33. Rabbi Lifshitz told IDOC in his report that in order for Jewish prisoners to practice their religion, prisoners who wish to eat kosher food should be given the full opportunity to do so without compromising their nutrition and without unfairness of when, where, or how they must eat. Rabbi Lifshitz explained that IDOC could use frozen and shelf-stable kosher meals along with disposable dishes and utensils to provide a kosher meal option. He also emphasized that IDOC would have to also ensure that during food items served during Passover are kosher for Passover.

34. Rabbi Lifshitz emphasized the importance of kosher meals options in his report, stating that "anything short of implementing a satisfactory kosher system cannot be accepted by the author as an adequate solution."

35. IDOC's own "Handbook of Religious Beliefs and Practices" states unequivocally that "Any Jewish inmate must, upon request, be provided with a religiously acceptable (kosher) diet" and that "Any Jewish inmate, whether or not participating on a regular Jewish religious diet program must, upon request, be provided with a diet during the eight days of Passover that meets all the religious requirements of that period (i.e., no leavening, etc.)."

36. Yet, IDOC currently does not offer kosher meals to its prisoners.

37. Instead of providing kosher meals, IDOC offers a "mainline" menu plus five additional selective diets available to all prisoners:

**VERIFIED CLASS ACTION CIVIL RIGHTS COMPLAINT – Page 11**

! The Healthy Choice Diet, with reduced calories, fat, sodium, and sugar.

! A non-pork diet that substitutes pork-free alternatives for food items in the mainline menu that contain pork.

! A lacto-ovo Vegetarian Diet" without meat but including dairy items and eggs.

! A vegan diet without meat or animal products.

! Common Fare, which is "comprised of vegan food items plus eggs, and/or dairy, and/or kosher meats, as well as cooking and serving procedures that maintain separation of dairy from meat and common fare foods from non-common fare foods."

38. In addition to these diets available to all prisoners, IDOC prepares special meals for prisoners with medically necessary dietary needs not met by either the mainline or the five selective diets. IDOC provides not only a variety of standard medical diets, but also "special provision" diets to address needs that cannot be met by either a selective diet or a standard medical diet option.

39. None of the meal options that IDOC offers is kosher.

40. Although the Common Fare selective diet includes kosher meats and calls for separation of dairy from meat and common fare foods from non-common

**VERIFIED CLASS ACTION CIVIL RIGHTS COMPLAINT – Page 12**

fare foods, it is not kosher. IDOC neither designed nor intended the Common Fare diet to be kosher.

41. Plaintiffs' counsel even warned IDOC that its Common Fare diet was not kosher (or kosher for Passover). Counsel offered to arrange consultations with local rabbis, both Reform and Orthodox, for IDOC. Yet, IDOC indicated that it did not expect to make any adjustments to the Common Fare diet so that it would be kosher or kosher for Passover.

42. What Common Fare does appear to provide is an adequate *halal* diet option for Muslim prisoners. Because the kosher standard for meat products and butchering is more demanding than halal standards, the kosher meat included in the Common Fare diet means that diet meets the religious dietary restrictions of Muslim prisoners, but not those of Jewish ones.

43. Indeed, IDOC through its Common Fare diet together with the mainline and selective diets, meets the religious dietary restrictions of all the religions listed in its "Handbook of Religious Beliefs and Practices" **except** the kosher requirements of Judaism.

44. IDOC's refusal to provide kosher meals violates the religious rights of Jewish prisoners in Idaho. IDOC's dietary policies force prisoners with a religious basis for consuming kosher meals to violate their core religious beliefs on a daily basis.

**VERIFIED CLASS ACTION CIVIL RIGHTS COMPLAINT – Page 13**

45. The substantial burden the IDOC's dietary policies impose on these prisoners is not necessary achieve any compelling state interest. Indeed, the Federal Bureau of Prisons and most state departments of correction offer kosher meals while achieving government interests indistinguishable from IDOC's.

**The plaintiffs**

46. Bill Bartlett's Jewish grandmother introduced him to Judaism as a child, and he followed Jewish practices during his teen years. He has now been an observant Jew continuously for the past ten years. Since 2014, IDOC has approved him to wear his *tzitzit*—a four-cornered religious undershirt, featuring tassels, which Jewish males are supposed to wear throughout the day, every day of the year. He has observed all of the fast days observed by Orthodox Jews during his confinement in prison since 2009. IDOC currently confines him at the Idaho State Correctional Center (ISCC), though it has moved him among several prisons, including the Idaho State Correctional Institution (ISCI) and Idaho Correctional Institution – Orofino (ICIO). He has been asking IDOC to provide him with kosher meals since at least 2009.

47. Bill Bartlett has repeatedly asked for kosher meals, both verbally and through IDOC' concern and grievance process. He has exhausted the grievance process multiple times requesting kosher meals. Most recently, he had a grievance appeal denied on March 14, 2017. His grievance stated that the Common Fare diet

**VERIFIED CLASS ACTION CIVIL RIGHTS COMPLAINT – Page 14**

is not kosher and that, "[a]s an Orthodox Jewish man, my scriptures instruct us to eat and be Kosher." IDOC staff denied his grievance and refused to make any changes to its diet offerings or policies.

48. Kenneth Felder was introduced to Jewish practices as a young child, by his parents, as far back as he can remember. While growing up he observed Passover and Chanukah. His grandfather was a leader and teacher in his synagogue for 40 years. As a teenager he fell out of Jewish practice, after his parents divorced. But about 15 years ago, before prison, he began to observe Passover and Chanukah and saying daily Jewish prayers. He now follows an Orthodox Jewish practice in prison, and he has been an inmate teacher and service leader for Jewish congregate worship at ISCC. He has been asking IDOC to provide him with kosher meals since at least 2014.

49. Kenneth Felder has also repeatedly asked both verbally and through the concern and grievance process for kosher meals. He most recently completed the grievance process on November 15, 2016. He grieved there that

> IDOC is violating my first amendment right to the full expression of my religion by denying me a kosher diet. The selective diet SOP 403.02.01.003 to include common fa[re] is not kosher and is not currently available throughout all IDOC facilit[ies.] Your policy and practices impede me from practicing the ba[s]ic tenets of my Jewish faith. A kosher diet does not constitute a security issue nor would it creat[e] an unreas[onable] government expe[n]se beyond the IDOC's current obligations[.]

IDOC's final, appeal-level response to this grievance was this:

**VERIFIED CLASS ACTION CIVIL RIGHTS COMPLAINT – Page 15**

> The IDOC dietician's response does support IDOC's position. "IDOC does not offer religious menus. However, there are selective diet options for inmates to choose from that meet the dietary preferences of various religions and lifestyle choices. The common fare menu is being implemented at IDOC facilities as equipment is available.
>
> ISCC offers those menus approved by IDOC.

Yet, IDOC still does not provide a kosher diet option to Kenneth Felder or any other Jewish prisoner.

50. Brian Halstrom has been studying Judaism and Christianity over the past 20 years. He began to follow Jewish practices about three years ago, shortly before he went to prison. For him, Judaism and Jewish practice gives him something that he has lacked in his life. He feels that if he had a religious practice before in his life, he would not be in prison now. His commitment to Jewish practice is the foundation of his commitment to lead a better life.

51. Brian Halstrom has exhausted IDOC's grievance procedure asking for kosher food. Most recently, he made clear that "Kosher is a tenet of Jewish religious existence, and there in, cannot be ignored. I am not asking for a feast like you provide the Christians on Christmas, just basic Jewish diet." He also specifically requested food during Passover that is kosher for Passover, complaining that "I have been told to provide my own food for Passover or starve if I wish to practice my religion." IDOC denied his request, stating in its final, appeal-level response on October 26, 2016, that "There are no meals that are

**VERIFIED CLASS ACTION CIVIL RIGHTS COMPLAINT – Page 16**

purchased by IDOC specific to religious preference" and that "At this time your appeal to have IDOC request a change in the policy regarding Passover meals is denied. You have met your administrative responsibility."

52. Jonathan Jennings has been practicing Judaism since the mid 1990s. He formally converted to Judaism when he was 17, completing a full conversion program at the Congregation Beth Shalom in Bloomington, Indiana, over the court of a year and a half. As part of his conversion, he had to learn Hebrew, read from the Torah at the synagogue in front of the congregation, and go through the *bris* ceremony. He considers himself a Reform Jew. Because IDOC refuses to provide him with food during Passover that is kosher for Passover, for the past three years during Passover he has starved, except for fruit this year.

53. Jonathan Jennings has also exhausted his IDOC's grievance procedure requesting kosher for Passover food during Passover. He grieved in May 2015 that "in April for 8 days I was told to go hungry for Passover I requested a non-leaven diet, for I am not allowed by Jewish law to eat or have around food that I eat anything leaven (oats, bread, etc)." He went to report that "[b]ecause of my belief I had to go without eating for 8 days." IDOC responded that because other inmates participating in the same religious observance, "[i]f you did indeed go any amount of time without meals it was your own decision to do so." Jennings tried to commence the grievance process about the lack of a kosher for Passover option

**VERIFIED CLASS ACTION CIVIL RIGHTS COMPLAINT – Page 17**

during Passover again this year, but IDOC referred him to its response to his prior grievances about this.

54. All of the plaintiffs reside in and are confined to an institution, and the burdens on their religious exercise are imposed in a program or activity that receives Federal financial assistance. Those burdens also affect commerce among the several States, or with foreign nations of Indian tribes, as would the removal of those burdens.

**The defendants**

55. The Director of the Idaho Department of Correction is the ultimate decision-maker with authority to approve IDOC policies, including dietary policies. The current Director is Henry Atencio.

56. The IDOC Deputy Director directly oversees the IDOC Chief of Prisons and IDOC's prison operations. The Deputy Director also assists the IDOC Director with his responsibilities. The current Deputy Director is Jeff Zmuda. Zmuda, in his previous position as IDOC Chief of Prisons, approved changes to IDOC's Standard Operating Procedure governing special and selective diets for IDOC prisoners, including the new Common Fare selective diet, without providing for kosher or kosher for Passover meals for Jewish prisoners who want to keep kosher.

57. The IDOC Chief of Prisons is the person with authority to approve IDOC prisoners' requests for new and unfamiliar religious accommodations. The

**VERIFIED CLASS ACTION CIVIL RIGHTS COMPLAINT – Page 18**

Chief of Prisons also designates persons to serve on IDOC's Religious Activity Review Committee and has authority to approve changes to IDOC's Standard Operating Procedure governing special and selective diets for IDOC prisoners. The current Chief of Prisons is Ashley Dowell.

58. The IDOC Dietary Services Manager and Food Service Manager are responsible for implementation and administrative oversight of IDOC's guidelines, standards, and procedures governing dietary and food services in IDOC prisons. They oversee menus for prisoner diets and food purchases, and they monitor food costs. The current Dietary Services Manager is Jessica Tyler and the current Food Service Manager is Jeannie Hunter.

59. IDOC has a Religious Activity Review Committee made up of at least three individuals designated by IDOC's Chief of Prisons. The RARC is responsible for making recommendations, in writing, when an IDOC prisoner requires a new or unfamiliar religious accommodation that is not already approved. The plaintiffs do not know for sure the names and identities of the current RARC members, as well as the RARC members who denied or failed to consider the plaintiffs' previous requests for kosher and kosher for Passover meals. Defendants J. Doe 1 through 10 are fictitious names to identify the current RARC member as well as former RARC members who denied or failed to consider the plaintiffs' requests for kosher and kosher for Passover meals. The plaintiffs will substitute these fictitious

**VERIFIED CLASS ACTION CIVIL RIGHTS COMPLAINT – Page 19**

names with the RARC members' true names once the plaintiffs discover their names.

60. Defendants J. Doe 11 through 20 are fictitious names to identity other IDOC employees or agents whose actions or omissions have played a part in denying kosher and kosher for Passover meals for the plaintiffs and class members. The plaintiffs will substitute these fictitious names with the employees' and agents' true names once the plaintiffs discover their names.

61. The plaintiffs and the class they seek to represent sue the defendants in their official capacity as to the class claims (claims 1 through 4). The named plaintiffs sue the defendants in their individual capacity as to their individual claims (claims 5 through 7).

**The class**

62. The plaintiffs propose to represent a class of all current and future Jewish prisoners confined in Idaho Department of Correction facilities who seek to maintain a kosher diet.

63. The proposed class asserts only the claims seeking prospective relief, claims 1 through 4 below, and not any claims seeking damages or other compensatory relief.

64. The total number of Jewish prisoners confined by IDOC who want to keep kosher is not yet known. IDOC has estimated that about 220 prisoners will

**VERIFIED CLASS ACTION CIVIL RIGHTS COMPLAINT – Page 20**

request its new Common Fare diet, IDOC's inadequate effort at providing a pseudo-kosher menu option. Even if only a fraction of those prisoners may want to keep kosher, joining all of them into a single action would be impracticable because of their numerosity.

65. There are important issues of law and fact common to the class, including whether IDOC has any compelling state interest in denying its prisoners kosher meals, whether complete denial of kosher meals is the least restrictive means of furthering any compelling state interest IDOC could demonstrate, and whether there are any other religious dietary restrictions that IDOC does not already accommodate with its existing dietary options.

66. The prospective relief claims are typical of the class as a whole. Like all of the class members, the class representatives are being denied a diet that meets the requirements of their religious faith.

67. The class representatives will fairly and adequately protect the interests of the class. The interests of the class representatives are not in conflict with the interests of any other Jewish prisoner seeking to maintain a kosher diet, and the class representatives have every incentive to pursue this litigation vigorously on behalf of themselves and the class as a whole.

**VERIFIED CLASS ACTION CIVIL RIGHTS COMPLAINT – Page 21**

68. The class representatives are represented by experienced counsel, including the American Civil Liberties Union of Idaho Foundation, whose attorney possesses substantial expertise in prosecuting class action lawsuits.

69. Pursing separate actions by individual members of the class, now and in the future, would create a risk of inconsistent or varying adjudications for individual members of the class. That could establish incompatible orders or standards of conduct for IDOC, which in themselves could create equal protection and other constitutional and religious rights violations.

70. The common questions of law and fact involved in this case predominate of any case-specific questions that may arise out of individual class members' claims for prospective relief. A class action is superior to other methods for fairly and efficiently adjudicating whether IDOC may deny Jewish prisoners kosher food going forward.

71. IDOC's complete refusal to provide a kosher diet to its prisoners applied generally to the entire class, across the board at all IDOC prisons. Accordingly, this Court can issue final injunctive and declaratory relief for all class members in this case.

**Jurisdiction**

72. This Court has jurisdiction over the action under 28 U.S.C. §§ 1331. It has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a),

**VERIFIED CLASS ACTION CIVIL RIGHTS COMPLAINT – Page 22**

because those claims form part of the same case or controversy under Article III of the United States Constitution.

73. The Court has the power jurisdiction to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201–2202 and FRCP 65.

74. Venue is proper in this Court and District, under 28 U.S.C. § 1391(b), because the defendants operate prisons throughout the District where they incarcerate the plaintiffs and other Jewish prisoners who want to keep kosher. Virtually all of the events, actions, and omissions that give rise to this complaint occurred in this District.

**Class claims for relief**

<u>Claim 1. RLUIPA</u>

75. IDOC does not provide kosher meals to prisoners in their custody who request the meals in accordance with their religious beliefs.

76. IDOC's denial of kosher meals is a substantial burden on the religious exercise of prisoners in IDOC's custody.

77. Denial of kosher meals is not the least restrictive means of furthering any compelling government interest.

78. Accordingly, IDOC's refusal to provide kosher meals violates RLUIPA, 42 U.S.C. § 2000cc.

**VERIFIED CLASS ACTION CIVIL RIGHTS COMPLAINT – Page 23**

<u>Claim 2. Equal Protection</u>

79. The Fourteenth Amendment to the United States Constitution prohibits IDOC from denying the plaintiffs equal protection of the laws.

80. By failing to accommodate the plaintiffs' religious dietary needs by providing kosher meals, while accommodating the dietary needs of similarly situated prisoners who follow other religious practices, IDOC has violated the plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment.

81. Under 42 U.S.C. § 1983, the plaintiffs are entitled to declaratory, injunctive, and prospective relief prohibiting IDOC from violating their rights, privileges, and immunities under federal law.

<u>Claim 3. Free Exercise</u>

82. The First and Fourteenth Amendments to the United States Constitution prohibits IDOC from prohibiting the plaintiffs' free exercise of their religion.

83. By failing to accommodate the plaintiffs' religious dietary needs by providing kosher meals, while accommodating the dietary needs of similarly situated prisoners who follow other religious practices, IDOC has violated the plaintiffs' rights under the Free Exercise Clause of the First Amendment, as incorporated against the State of Idaho under the Fourteenth Amendment.

**VERIFIED CLASS ACTION CIVIL RIGHTS COMPLAINT – Page 24**

84. Under 42 U.S.C. § 1983, the plaintiffs are entitled to declaratory, injunctive, and prospective relief prohibiting IDOC from violating their rights, privileges, and immunities under federal law.

### Claim 4. Free Exercise of Religion Protected Act

85. IDOC's denial of kosher meals is a substantial burden on the religious exercise of prisoners in IDOC's custody.

86. Denial of kosher meals is not the least restrictive means of furthering any compelling government interest.

87. Accordingly, IDOC's refusal to provide kosher meals violates Idaho's Free Exercise of Religion Protected Act, Idaho Code § 73-401–404.

**Individual claims for relief**

### Claim 5. Equal Protection

88. The individual, named plaintiffs have been suffered harm, including emotional distress and psychological damage, as a direct and proximate result of the defendants' Equal Protection violations described above. Accordingly, they seek compensatory and other damages under 42 U.S.C. § 1983 against the defendants, in their individual capacities, for that harm.

### Claim 6. Free Exercise

89. The individual, named plaintiffs have been suffered harm, including emotional distress and psychological damage, as a direct and proximate result of

**VERIFIED CLASS ACTION CIVIL RIGHTS COMPLAINT – Page 25**

the defendants' Free Exercise clause violations described above. Accordingly, they seek compensatory and other damages under 42 U.S.C. § 1983 against the defendants, in their individual capacities, for that harm.

<u>Claim 7. Free Exercise of Religion Protected Act</u>

90. The individual, named plaintiffs have been suffered harm, including emotional distress and psychological damage, as a direct and proximate result of the defendants' violations of Idaho's Free Exercise of Religion Protected Act described above. Accordingly, they seek compensatory and other damages under that Act against the defendants, in their individual capacities, for that harm.

**Prayer for relief**

The plaintiffs respectfully ask the Court for the following relief:

1. A declaration that the defendants have violated RLUIPA by failing to offer kosher meals to prisoners in their custody who desire a kosher diet to exercise their religious belief.

2. Injunctions—temporary, preliminary, and permanent—ordering the defendants, their officers, agents, contractors, attorneys, employees, subordinates, successors in office, and all those acting in concert or participation with them to provide prisoners in their custody with nutritionally sufficient kosher meals, including meals that are kosher for Passover during Passover.

3. Monetary damages to fairly and reasonably compensate the individual, named plaintiffs for the deprivation of their rights, including compensatory damages (including for emotional distress), consequential damages, and presumed damages.

4. Attorneys fees and costs under § 1988, RLUIPA, FERPA, and any other applicable law, decision, or custom.

5. All other relief that the Court determines appropriate or that the interests of justice may require.

Respectfully submitted on behalf of the plaintiffs,


/s/ Richard Eppink                      /s/ Craig Durham
American Civil Liberties Union          Ferguson Durham, PLLC
of Idaho Foundation


Dated: May 3, 2017

## **VERIFICATION**

I, Bill Ray Bartlett, verify that I have read the allegations contained in this Verified Complaint and that, other than allegations made upon information and belief, the allegations are true to the best of my knowledge, and I believe that the allegations made upon information and belief are true.

Under 28 U.S.C. § 1746, I verify under penalties of perjury that the foregoing is true and correct.

EXECUTED on this 18th day of April, 2017.

/s/ Bill Ray Bartlett

## **VERIFICATION**

I, Kenneth Felder, verify that I have read the allegations contained in this Verified Complaint and that, other than allegations made upon information and belief, the allegations are true to the best of my knowledge, and I believe that the allegations made upon information and belief are true.

Under 28 U.S.C. § 1746, I verify under penalties of perjury that the foregoing is true and correct.

EXECUTED on this 18th day of April, 2017.

/s/ Kenneth Felder

**VERIFIED CLASS ACTION CIVIL RIGHTS COMPLAINT – Page 28**

## VERIFICATION

I, Brian Halstrom, verify that I have read the allegations contained in this Verified Complaint and that, other than allegations made upon information and belief, the allegations are true to the best of my knowledge, and I believe that the allegations made upon information and belief are true.

Under 28 U.S.C. § 1746, I verify under penalties of perjury that the foregoing is true and correct.

EXECUTED on this 18th day of April, 2017.

/s/ Brian Halstrom


## VERIFICATION

I, Jonathan Jennings, verify that I have read the allegations contained in this Verified Complaint and that, other than allegations made upon information and belief, the allegations are true to the best of my knowledge, and I believe that the allegations made upon information and belief are true.

Under 28 U.S.C. § 1746, I verify under penalties of perjury that the foregoing is true and correct.

EXECUTED on this 18th day of April, 2017.

/s/ Jonathan Jennings