Richard Eppink
**AMERICAN CIVIL LIBERTIES UNION
OF IDAHO FOUNDATION**
Idaho State Bar no. 7503
reppink@acluidaho.org
P.O. Box 1897
Boise, Idaho  83701
(208) 344-9750, ext. 1202

Craig Durham
**FERGUSON DURHAM, PLLC**
Idaho State Bar no. 6428
chd@fergusondurham.com
223 N. 6th Street, Suite 235
Boise, Idaho  83702
(208) 345-5183

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| BILL BARTLETT, *et al.*, and all those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> HENRY ATENCIO, Director of the Idaho Department of Correction (IDOC), *et al.*, <br><br> Defendants. | Case No. 1:17-cv-00191-CWD <br><br> **RESPONSE TO DEFENDANTS' PARTIAL MOTION TO DISMISS FILED JULY 11, 2017** |

The Idaho Legislature crafted the Free Exercise of Religion Protected Act (FERPA) to ensure that Idahoans' religious liberties are protected by the most demanding scrutiny known to civil rights law. Following a partial settlement

**RESPONSE TO DEFENDANTS' PARTIAL MOTION TO DISMISS – Page 1**

guaranteeing prospective relief in this religious liberty case, only damages claims remain, including one under FERPA. The Ninth Circuit has been clear that pendent, individual capacity state law damages claims may proceed in federal court. Idaho's appellate courts have been just as clear that specific remedial statutes like FERPA override general laws like the Idaho Tort Claims Act. The defendants' motion to dismiss the FERPA claim must be denied.

## I. Background

Until the partial settlement agreement reached last month in this case, IDOC was an outlier. The Federal Bureau of Prisons and most state prison systems provided kosher meals to prisoners but IDOC did not. For years, the plaintiffs—Jewish prisoners—were forced to defile themselves in violation of their sincere religious beliefs every day, with every meal.

The settlement agreement (Dkt. 32-1) now requires the defendants (IDOC) to provide a kosher diet in the future. Justice will not be complete, however, until the plaintiffs are compensated for the years of religious discrimination they suffered in the past. The plaintiffs' three claims for damages remain pending: two federal claims under 42 U.S.C. § 1983 and one state law claim under FERPA. The defendants have moved to dismiss the FERPA claim (Dkt. 25), alternatively under either FRCP 12(b)(6) or through summary judgment under FRCP 12(d) and 56(a).

## II. Standards for Decision

The Court should decide IDOC's motion under the FRCP 12(b)(6) standard. The defendants correctly state that the 12(b)(6) standard requires the Court to accept all of the plaintiffs' well-pleaded allegations as true and construe them in the plaintiffs' favor. (Dkt. 25-1 at 4.) If the Court elects instead to treat IDOC's motion as a summary judgment motion, the plaintiffs are entitled under FRCP 12(d) to reasonable opportunity to present all material pertinent to the motion. But there is no need to do that. Although both sides refer in their briefing to tort claim notices in the record (Aff. Mason ex. A (Dkt. 25-8) and 2d Decl. Bartlett ex. A), under FRE 201 the Court may take judicial notice "of the records of state agencies and other undisputed matters of record," like those tort claim notices, without transforming the motion to dismiss into a summary judgment motion. *Disabled Rights Action Committee v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004).

## III. Argument

### A. Eleventh Amendment

Because the parties reached a court-ordered settlement agreement that ensures the plaintiffs have prospective relief (Dkt. 33 (incorporating partial settlement agreement and dismissing claims 1–4)), Claims 5–7 seeking damages are all that the Court has left to decide besides fees and costs.

The defendants have not moved to dismiss the plaintiffs' federal law Equal Protection and Free Exercise claims seeking damages under § 1983. Rather, IDOC asks the Court to dismiss the plaintiffs' state law claim only. (Dkt. 25-1 at 2.) The Department argues that the defendants are immune from that claim under the Eleventh Amendment. (*Id.*)

But the plaintiffs' remaining state law claim seeks damages against government defendants in their individual capacities. (Dkt. 1 at 20 ¶ 61, 26 ¶ 90.) The Eleventh Amendment does not bar pendent state law claims against state officials acting in their individual capacities. *Pena v. Gardner*, 976 F.2d 469, 473–474 (9th Cir. 1992).

The plaintiffs' FERPA claim for damages can proceed.

## B. Idaho Tort Claims Act

The plaintiffs have not sued the defendants under the Idaho Tort Claims Act (ITCA). In fact, applying the ITCA to limit FERPA claims would itself violate FERPA. Even if the plaintiffs had brought an ITCA claim, most of the plaintiffs have already satisfied ITCA's notice requirements, anyway.

### 1. The ITCA does not govern FERPA claims

Those alleging claims based on specific Idaho statutes do not have to comply with ITCA notice requirements unless the Legislature specifically requires it. *Van v. Portneuf Medical Center*, 147 Idaho 552, 558, 212 P.3d 982,

988 (2009). Idaho plaintiffs do not have to sue under the Idaho Tort Claims Act
when there is a more specific Idaho statute imposing governmental liability. *See
Hyde v. Fisher*, 143 Idaho 782, 786–787, 152 P.3d 653, 657–658 (Ct. App.
2007). "A basic tenet of statutory construction is that when two statutes conflict,
the more specific statute controls over the more general." *Id.*, 143 Idaho at 786,
152 P.3d at 657.

In particular, where one statute specifically imposes liability, it controls
over a more general statute like the ITCA. *Id.*, 143 Idaho at 787, 152 P.3d at
658. In *Van*, the Idaho Supreme Court made clear that ITCA tort claim notices
are required only when a plaintiff asserts claims "covered by the ITCA." 147
Idaho at 557, 212 P.3d at 987. Where the legislature has created a purely
statutory remedy, "there is no reason to assume that the Legislature intended
those alleging claims under the statute to have to comply with the notice
provision of the ITCA where the Legislature did not specifically require it." *Id.*,
147 Idaho at 558, 212 P.3d at 988. As the Supreme Court had explained
previously, where the legislature has "gone further" by providing specific
statutory protections, the procedures under that statute govern and control over
"a statute general in nature applying to common law actions . . . ." *H-K
Contractors, Inc. v. City of Firth*, 101 Idaho 224, 225, 611 P.2d 1009, 1010
(1979). It is the "more recent and more specifically applicable statute" that

governs. *Johnson v. Boundary School District*, 138 Idaho 331, 335, 63 P.3d 457, 461 (2003). For instance, where one statute specifically governs lawsuits contesting levy elections, the requirements of the statute generally governing election contests do not apply. *Id.* Thus, the court held in *Hyde* that "the FERPA, as the more recent enactment and the one specifically addressing vindication of the fundamental right of religious exercise, governs this action and precludes application of [a general bond requirement found at] I.C. § 6-610 to prevent an indigent inmate from pursuing a FERPA action." 143 Idaho at 787, 152 P.3d at 658.

For the same reasons, FERPA precludes application of the I.C. § 6-905 notice provision.° The FERPA, passed in 2000, is the more recent enactment: the ITCA was passed decades earlier in 1971 and its I.C. § 6-905 notice provision has not changed since 1985. The FERPA does not modify common law claims governed by ITCA, but instead "codif[ies] and supplement[s] rights guaranteed by the Constitution of the State of Idaho." 2000 Idaho Session Laws 352, ch. 133, § 1(5).The FERPA specifically protects fundamental rights. I.C. § 73-

---

° The defendants cite *Morgan v. IDOC*, no. 1:15-cv-00062-CWD, Dkt. 26 at 6 (D. Idaho Oct. 28, 2015), as holding that the ITCA governs FERPA claims. Yet the unrepresented plaintiff in that case did not argue that the ITCA did not apply, but instead that he had in fact filed a tort claim notice. This Court did not make that decision with the benefit of legal argument on ITCA's applicability. The Idaho Supreme Court's decision in *Van*, 147 Idaho at 558, 212 P.3d at 988, which neither side in *Morgan* appears to have cited, dictates a contrary holding.

402(1). It sets out is own procedures for suing to protect those rights. I.C. § 73-402(4). In particular, the Legislature expressly guaranteed that "[a] person whose religious exercise is burdened in violation of this section may assert that violation *as a claim* or defense *in a judicial proceeding*"—without any ITCA or other advance notice prerequisite. *Id.* (emphasis added).

The FERPA therefore procedurally conflicts with the ITCA because the FERPA does not require any advance notice of the claim before asserting it. Idaho courts recognize that this provision gives plaintiffs a "right" to assert religious freedom violations in judicial proceedings. *Hyde*, 143 Idaho at 786, 152 P.3d at 657. That is not the only conflict between the two statutes. The ITCA does not allow punitive damages, I.C. § 6-918, yet the FERPA allows all "appropriate relief," I.C. § 73-402(4). The ITCA allows an award of attorneys fees only upon clear and convincing proof of bad faith, I.C. § 6-918A, while the FERPA mandates an award of fees to prevailing plaintiffs, I.C. § 73-402(4). And a separate statute of limitations applies to statutory causes of action, confirming that the Idaho Legislature views them in a category distinct from tort claims. *Van*, 147 Idaho at 558, 212 P.3d at 988.

The FERPA is also substantively more specific than the ITCA, and its standard conflicts with the ITCA standard. The FERPA imposes liability only for burdens on religious exercise. The standard is strict: defendants are liable

unless they can overcome their burden to show that they chose the least restrictive means of furthering a compelling government interest. I.C. § 73-402(3). The ITCA, on the other hand, imposes a much more forgiving test, allowing liability only for negligent or otherwise wrongful acts, and does not place any burden on defendants to justify their choices like the FERPA does. I.C. § 6-903(1). The ITCA also includes a long list of exceptions to governmental liability, including performance of statutory or regulatory functions, assessment of fees, and denial of permits. I.C. §§ 6-904(1), 6-904A(1), 6-904B(3); *see generally* I.C. §§ 6-904, 6-904A, 6-904B.  The legislature obviously did not intend to exempt defendants from FERPA liability for performing statutory or regulatory functions. You don't have to read between FERPA's lines to see this: the Legislature made explicit that the FERPA "applies to all state laws and local ordinances *and the implementation of those laws and ordinances*, whether statutory or otherwise . . . ." I.C. § 73-403(1) (emphasis added). The Legislature went on to make clear that government could be liable under FERPA for other actions, like permit denials and fee assessments, by mandating that FERPA "shall not be construed to authorize any government to burden any religious belief." I.C. § 73-403(3). All of the ITCA's limitations conflict with the broad, remedial provisions of the FERPA.

The ITCA provides a general immunity from liability. The FERPA, in contrast, provides a specific basis for liability that conflicts with the standards and limitations imposed on ITCA claims. The plaintiffs sued the defendants under FERPA, not ITCA. The FERPA, not ITCA, therefore governs the plaintiffs' state law damages claims. The plaintiffs have followed the FERPA's procedural requirements by asserting their claims in a judicial proceeding. Their claims can proceed.

### 2. Applying ITCA to bar FERPA claims would violate FERPA

In *Hyde*, the Idaho Court of Appeals also held that imposing statutory procedural requirements found elsewhere in the Idaho Code on FERPA claims would itself be a violation of the FERPA. 143 Idaho at 786, 152 P.3d at 657. In that case, an IDOC warden argued that the prisoner plaintiff there had not complied with I.C. § 6-610, which requires plaintiffs who sue law enforcement officers to post bond before their claims can proceed in court. *Id.*, 143 Idaho at 785, 152 P.3d at 656. In refusing to apply the I.C. § 6-610 bond requirement, the court observed that "[t]he very purpose of the FERPA is to outlaw any state action, including the application of 'laws' or 'rules,' I.C. § 73-402(1), that burden the exercise of religious practices" and cannot survive strict judicial scrutiny. *Id.*, 143 Idaho at 786, 152 P.3d at 657. Applying the I.C. § 6-610 bond requirements to FERPA claims would bar indigent prisoners from pursuing those claims, the

court held. *Id.* The bond requirements "would stand in direct contravention of the FERPA by preventing the vindication of the 'fundamental right' that the FERPA was enacted to protect." *Id.*

Just like in *Hyde*, enforcing I.C. § 6-905 to require advance notice before a complaint alleging a FERPA violation could even be filed would amount to an absolute bar to the plaintiffs' claims in this case. The plaintiffs here have not only been damaged from years of being forced by hunger to violate their sincere religious beliefs, the violations were still ongoing when they filed suit. The plaintiffs needed both retrospective, compensatory relief for the past damage as well as prompt, prospective relief to end the ongoing harm. But if they first had to file an I.C. § 6-905 notice under the ITCA, they would have had to wait up to 90 days before they could file their lawsuit. I.C. §§ 6-909, 6-910.  Because IDOC's lack of kosher options was a continuing burden on the plaintiffs' religious exercise, waiting 90 days to file suit would burden the plaintiffs with 90 more days of FERPA violations with every meal. That "would itself be a violation of the FERPA," as the *Hyde* court explained, and for at least 90 days "would stand in direct contravention of the FERPA by preventing the vindication of the 'fundamental right' that the FERPA was enacted to protect." 143 Idaho at 786, 152 P.3d at 657.

Under the FERPA's own prescribed analysis, applying the I.C. § 6-905 notice requirement is not essential to further any compelling governmental interest. I.C. § 73-402(3)(a). The State has three interests in the I.C. § 6-905 notice provision: (1) to "save needless expense and litigation by providing an opportunity for amicable resolution," (2) to "allow authorities to conduct a full investigation into the cause of the injury in order to determine the extent of the state's liability," and (3) to "allow the state to prepare defenses." *Mitchell v. Bingham Memorial Hospital*, 130 Idaho 420, 424, 942 P.2d 544, 548 (1997). As the State knows, the plaintiffs can proceed with full-bore litigation on their federal claims for both prospective relief and damages without filing a tort claim notice. *Overman v. Klein*, 103 Idaho 795, 799, 654 P.2d 888, 892 (1982). The plaintiffs' right to proceed on virtually identical federal damages claims evaporates any interest the State may have in avoiding litigation, investigating the companion state law damages claims before suit, or preparing defenses which it must already prepare to the federal claims.

Even if the State had any compelling governmental interest in investigating or preparing to defend the state law damages claims, requiring the plaintiffs to give up to 90 days advance notice of them when they also have claims for prospective relief is not the least restrictive means of furthering that compelling governmental interest. I.C. § 73-402(3)(b). The least restrictive

means to further these interests would be to allow the plaintiffs to file suit and then require IDOC to move the Court for a stay of the state law damages claims for the least amount of time necessary for the State to investigate and prepare defenses to those damages claims.

In the first section of FERPA as enacted—entitled "Legislative Intent"—the Idaho Legislature made clear that it was exercising its authority "to protect the free exercise of religion by principles that are separate from, complementary to and more expansive than the first amendment of the United States Constitution." 2000 Idaho Session Laws 352, ch. 133, § 1(4). The Legislature went on to make it doubly clear that "[t]his chapter shall not be construed to authorize any government to burden any religious belief." I.C. § 73-403(3). The Legislature did not intend to impose ITCA requirements on FERPA claims. Those requirements, especially in this case, would themselves violate FERPA. The plaintiffs' claims cannot be dismissed for noncompliance with inapplicable ITCA notice provisions.

### 3. The plaintiffs did comply with ITCA

Even though it wasn't necessary, three of the plaintiffs complied with the ITCA notice provisions at I.C. § 6-905. As to those three—Bill Bartlett, Kenneth Felder, and Jonathan Jennings—IDOC does not argue that they never filed a

tort claim, but rather that they never filed a tort claim "against these *particular* Defendants." (Dkt. 25-1 at 9.)

But they did. Both Felder and Jennings named John and Jane Does, employed by IDOC, in their tort claim notices. (Dkt. 25-8 at 2, 6). They have, accordingly, named John and Jane Does in the complaint in this case. (Dkt. 1 at 20 ¶ 60.) Bartlett filed an I.C. § 6-905 tort claim notice in May 2015 naming Jeff Zmuda and Jessyca Tyler, employed by IDOC, as well as the IDOC Director and Chief of Prisons. (2d Decl. Bartlett ex. A at 2.) All of those are named in the complaint in this case. (Dkt. 1 at 18–19 ¶¶ 55–58.) The ITCA makes clear that plaintiffs need only state the names of all persons involved "if known." I.C. § 6-907. An ITCA claim, moreover, "shall not be held invalid or insufficient by reason of an inaccuracy in stating the . . . nature or cause of the claim, or otherwise, unless it is shown that the governmental entity was in fact misled to its injury thereby." *Id.* The plaintiffs' tort claim notices were unmistakably about IDOC's systemic failure to provide kosher meals, and IDOC has not shown that it was misled or prejudiced by them.

"A strict or literal interpretation of the notice requirements of the ITCA would result in denying the legitimate claims of those who have suffered injury at the hands of the state, without furthering in the least the legislative purposes behind the statute." *Farber v. State*, 102 Idaho 398, 402, 630 P.2d 685, 689

(1981). If this case were an ITCA case, the defendants would have more than adequate notice of the tort claims involved. As an alternative ground for denying the defendants' partial motion to dismiss, the Court can point that out.

### IV. Conclusion

The Court should deny the defendants' partial motion to dismiss.

Respectfully submitted,

/s/ Richard Eppink                      /s/ Craig Durham
American Civil Liberties Union          Ferguson Durham, PLLC
of Idaho Foundation


Dated: September 4, 2017

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 4th day of September, 2017, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Leslie Marie Hayes
leslie.hayes@ag.idaho.gov

DATED this 4th day of September, 2017.

/s/ Richard Alan Eppink